[Cite as *In re Z.B.*, 2017-Ohio-271.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  |  |
|---|---|---|
|  | : | JUDGES: |
|  | : |  |
|  | : | Hon. W. Scott Gwin, P.J. |
| IN RE Z.B. | : | Hon. William B. Hoffman, J. |
|  | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
|  | : | Case No. 2016CA00162 |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : |  |
|  | : | O P I N I O N |

CHARACTER OF PROCEEDING: Appeal from the Stark County Court of
Appeals, Family Court Division Case
No. 2015 JCV 00787

JUDGMENT: AFFIRMED

DATE OF JUDGMENT ENTRY: January 23, 2017

APPEARANCES:

For Father-Appellant:

MARY G. WARLOP
Abney Law Office, LLC
116 Cleveland Ave. NW, Suite 500
Canton, OH 44702

For SCDJFS-Appellee:

BRANDON J. WALTENBAUGH
300 Market Ave. N.
Canton, OH 44702

*Delaney, J.*

{¶1}   Father-Appellant appeals the August 5, 2016 judgment entry of the Stark County Court of Common Pleas, Family Court Division granting permanent custody of Z.B. to Appellee Stark County Department of Job and Family Services.

**FACTS AND PROCEDURAL HISTORY**

{¶2}   Father-Appellant is the father of Z.B., born on September 1, 2015. At the time of Z.B.'s birth, Father was in prison.

{¶3}   On September 3, 2015, Appellee Stark County Department of Job and Family Services ("SCDJFS") filed a complaint alleging Z.B. to be a dependent and neglected child, and sought temporary custody of the child. The allegations of the complaint were based in part on Mother's ongoing case involving Z.B.'s older sibling. Father was not named in the complaint because Mother failed to disclose his name. The trial court found probable cause existed and placed Z.B. in the emergency temporary custody of SCDJFS.

{¶4}   On November 12, 2015, the trial court found Z.B. to be a dependent child and placed her in the temporary custody of SCDJFS. She was placed in the foster-to-adopt home with her sister. The trial court approved and adopted the case plan for Mother and found that SCDJFS had made reasonable efforts to prevent the need for the continued removal of the child from the home.

{¶5}   On February 8, 2016, Father was made a party to the case.

{¶6}   On June 7, 2016, SCDJFS filed a motion seeking permanent custody of Z.B. In the motion, SCDJFS alleged the child could not or should not be placed with Father within a reasonable amount of time, the child had been abandoned, Father had

involuntarily lost permanent custody of two children in prior cases, and permanent custody was in the child's best interests.

{¶7} The trial court held a hearing on the motion for permanent custody on August 3, 2016. Michelle Singleton, the ongoing caseworker with SCDJFS, testified as to Z.B. and Father. Singleton testified Father was released from prison in June 2016. He had an extensive criminal record, including sexual imposition, falsification, possession of heroin, failure to register new address, aggravated possession of drugs, theft, carrying concealed weapons, improperly handling firearms, and disorderly conduct. (T. 5-6).

{¶8} Father was involved in two previous permanent custody cases in 2006 and 2015 where permanent custody was granted to SCDJFS. In the 2015 case, Father was assigned a case plan that included an evaluation from Northeast Ohio Behavioral Health, an assessment through Quest, mental health case management, anger management, and sex offender treatment. Father did not complete any of the services. (T. 6). In the present case, when Father was released from prison, Singleton testified SCDJFS did not write a new case plan for Father. (T. 9). Father expressed an interest in working on a case plan. (T. 9).

{¶9} After Father was released from prison in June 2016, Father started visitation with Z.B. (T. 8). Singleton testified Father's visits with Z.B. were consistent and appropriate. (T. 8). Singleton, however, had concerns about Father's parenting abilities. (T. 8). Father did not have a stable residence and he was not employed. (T. 8).

{¶10} In the best interests phase of the hearing, Singleton testified as to Z.B.'s placement. Z.B. was placed in the foster-to-adopt home with her older sister, T.B., born

on October 19, 2011. (T. 13-14). Singleton stated T.B. was close to her sister and it would be detrimental to separate the children. (T. 15).

{¶11} Father's mother was considered as a possible placement. (T. 20). SCDJFS completed a home study and a decision was made to place Z.B. with Father's mother. (T. 20). Father's mother contacted SCDJFS and stated she could not take Z.B. because she was going on a missions trip to the Dominican Republic. It was later determined that Father's mother was actually incarcerated in Columbiana County. (T. 21). SCDJFS has received calls for placement with Father's father and another relative, but SCDJFS did not pursue the placements because the motion for permanent custody was pending. (T. 21). The other relatives could be considered for adoption even if permanent custody was granted. (T. 21).

{¶12} Singleton recommended it was in the best interests of Z.B. if permanent custody was granted to SCDJFS. (T. 21). The Guardian ad Litem recommended permanent custody be granted to SCDJFS. (T. 28-29).

{¶13} The trial court issued its findings of fact and conclusions of law on August 5, 2016. It granted permanent custody of Z.B. to SCDJFS and terminated Father's parental rights. The judgment entry was issued on August 5, 2016.

{¶14} It is from this judgement entry Father now appeals.

**ASSIGNMENTS OF ERROR**

{¶15} Father raises two Assignments of Error:

{¶16} "I. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO THE STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT

GROUNDS EXISTED FOR PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶17} "II. THE TRIAL COURT ERRED IN GRANTING PERMANENT CUSTODY TO STARK COUNTY DEPARTMENT OF JOB AND FAMILY SERVICES (SCDJFS) AS SCDJFS FAILED TO SHOW BY CLEAR AND CONVINCING EVIDENCE THAT IT IS IN THE BEST INTERESTS OF THE MINOR CHILD TO GRANT PERMANENT CUSTODY AND SUCH DECISION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."

**ANALYSIS**

{¶18} Father argues the trial court erred in granting permanent custody of Z.B. to SCDJFS. We disagree.

{¶19} "[T]he right to raise a child is an 'essential' and 'basic' civil right." *In re Murray*, 52 Ohio St.3d 155, 157, 556 N.E.2d 1169 (1990), quoting *Stanley v. Illinois*, 405 U.S. 645, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972). An award of permanent custody must be based on clear and convincing evidence. R.C. 2151.414(B)(1). Clear and convincing evidence is that evidence "which will provide in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established." *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118 (1954). "Where the degree of proof required to sustain an issue must be clear and convincing, a reviewing court will examine the record to determine whether the trier of facts had sufficient evidence before it to satisfy the requisite degree of proof." *Id.* at 477, 120 N.E.2d 118. If some competent, credible evidence going to all the essential elements of the case supports the trial court's judgment, an appellate court must affirm the judgment and not substitute its judgment for that of the trial court. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578 (1978).{¶ 31}

{¶20} Issues relating to the credibility of witnesses and the weight to be given to the evidence are primarily for the trier of fact. *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). Deferring to the trial court on matters of credibility is "crucial in a child custody case, where there may be much evidence in the parties' demeanor and attitude that does not translate to the record well." *Davis v. Flickinger*, 77 Ohio St.3d 415, 419, 674 N.E.2d 1159 (1997).

{¶21} R.C. 2151.414 sets forth the guidelines a trial court must follow when deciding a motion for permanent custody. R.C. 2151.414(A)(1) mandates the trial court schedule a hearing and provide notice upon the filing of a motion for permanent custody of a child by a public children services agency.

{¶22} Following the hearing, R.C. 2151.414(B) authorizes the juvenile court to grant permanent custody of the child to the public or private agency if the court determines, by clear and convincing evidence, it is in the best interest of the child to grant permanent custody to the agency, and that any of the following apply: (a) the child is not abandoned or orphaned, and the child cannot be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents; (b) the child is abandoned; (c) the child is orphaned and there are no relatives of the child who are able to take permanent custody; or (d) the child has been in the temporary custody of one or more public children services agencies or private child placement agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999.

{¶23} Therefore, R.C. 2151.414(B) establishes a two-pronged analysis the trial court must apply when ruling on a motion for permanent custody. In practice, a trial court

will usually determine whether one of the four circumstances delineated in R.C. 2151.414(B)(1)(a) through (d) is present before proceeding to a determination regarding the best interest of the child.

**I.**

{¶24} In the present case, the trial court made findings pursuant to R.C. 2151.414(B)(1)(a) and R.C. 2151.414(B)(1)(b) to find that permanent custody should be granted to SCDJFS. Pursuant to R.C. 2151.414(B)(1)(a), the trial court found the child could not be placed with either of the child's parents within a reasonable time or should not be placed with the child's parents. In making this decision, the trial court must consider the factors of R.C. 2151.414(E). R.C. 2151.414 states in applicable part:

(1) Following the placement of the child outside the child's home and notwithstanding reasonable case planning and diligent efforts by the agency to assist the parents to remedy the problems that initially caused the child to be placed outside the home, the parent has failed continuously and repeatedly to substantially remedy the conditions causing the child to be placed outside the child's home. In determining whether the parents have substantially remedied those conditions, the court shall consider parental utilization of medical, psychiatric, psychological, and other social and rehabilitative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties.

* * *

(10) The parent has abandoned the child.

(11) The parent has had parental rights involuntarily terminated with respect to a sibling of the child pursuant to this section or section 2151.353 or 2151.415 of the Revised Code, or under an existing or former law of this state, any other state, or the United States that is substantially equivalent to those sections, and the parent has failed to provide clear and convincing evidence to prove that, notwithstanding the prior termination, the parent can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child.

{¶25} In support of its decision, the trial court referred to Father's extensive criminal history for which Father spent time in prison or jail. Father was most recently released from prison in June 2016. At the time of the hearing, Father did not have employment or stable housing. There was testimony that SCDJFS did not give Father a case plan for the present case. Singleton testified, however, that Father was involved in a permanent custody action in 2015 for which he was assigned case plan services including a parenting evaluation, drug assessment, mental health services, anger management, and sex offender treatment. Father did not complete any of the case plan services.

{¶26} Pursuant to R.C. 2151.414(E)(11), evidence was presented that Father has lost custody of two children. The burden then shifts to Father to prove by clear and convincing evidence that he can provide a legally secure permanent placement and adequate care for the health, welfare, and safety of the child. There is no evidence in the record as to this argument.

{¶27} R.C. 2151.414(B)(1)(b) states the trial court may grant permanent custody if the child is abandoned. Abandonment is defined in R.C. 2151.011(C) as, "a child is presumed abandoned when the parents of the child have failed to visit or maintain contact with the child for more than ninety days, regardless of whether the parents resume contact with the child after that period of ninety days." Singleton testified that Father had no contact with Z.B. from her birth on September 1, 2015 to June 2016. Father did not have any contact with Z.B. until after he was released from prison. This is in excess of 90 days.

{¶28} There is clear and convincing evidence in the record to support the trial court's conclusion that Z.B. could not and should not be placed with Father within a reasonable amount of time and that Father abandoned Z.B.

**II.**

{¶29} Father next argues the trial court erred in finding it was in the best interests of Z.B. to grant permanent custody to SCDJFS. We disagree.

{¶30} To fulfill the second prong of the permanent custody analysis, the trial court must find, by a showing of clear and convincing evidence, that an award of permanent custody is in the best interests of the child. R.C. 2151.414(D). The trial court must consider all relevant factors, including but not limited to:

(a) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;

(b) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;

(c) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period, or the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two-month period and, as described in division (D)(1) of section 2151.413 of the Revised Code, the child was previously in the temporary custody of an equivalent agency in another state;

(d) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;

(e) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child.

{¶31} Father contends that because Z.B. has been in the temporary custody of SCDJFS for less than 12 months, the decision to grant permanent custody was premature. Father argues that if more time was granted, he could work on his case plan or there could be a parental relative placement.

{¶32} Z.B. was placed in a foster-to-adopt home at birth. She is placed in the home with her older sibling, who is very attached to Z.B. The foster family wants to adopt both children. Singleton testified it would be detrimental for the siblings to be separated from each other.

{¶33} Father's visits with Z.B. were consistent and appropriate.

{¶34} The Guardian ad Litem recommended permanent custody be granted to SCDJFS.

{¶35} SCDJFS did attempt to place Z.B. with Father's mother, but she was ruled out as a possible placement because she was not attending a missions trip in the Dominican Republic as she claimed, but was instead incarcerated in Columbiana County. Two other familial placements were presented to SCDJFS shortly before the permanent custody hearing.

{¶36} Upon this record, we find the trial court's decision that it was in the best interests of Z.B. to be placed in the permanent custody of SCDJFS is supported by the evidence.

{¶37} Father's two Assignments of Error are overruled.

**CONCLUSION**

{¶38} The judgment of the Stark County Court of Common Pleas, Family Division is affirmed.

By: Delaney, J.,

Gwin, P.J. and

Hoffman, J., concur.